UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
ASHRAF KHODEIR et al.,                            :

                        Plaintiffs,               :          OPINION AND ORDER

        -v.-                                      :
                                                             15 Civ. 8763 (GWG)
MARWAN SAYYED et al.,                             :

                        Defendants.               :
------------------------------------------------------X

**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

       Plaintiffs Ashraf Khodeir and Rasha Elgahsh, on behalf of themselves and their children,

have sued defendants Marwan Sayyed ("Marwan") and Subhi Sayyed ("Sayyed"), alleging

violations of the Fair Housing Act, as well various state law causes of action.  After plaintiffs

amended their Complaint and Sayyed filed an Answer to that Amended Complaint, Sayyed filed

an Amended Answer and Counterclaims.  Plaintiffs now move to strike Sayyed's Amended

Answer and Counterclaims or, in the alternative, to dismiss Sayyed's Counterclaims.[1]

       We first address plaintiffs' motion to strike Sayyed's Amended Answer and

Counterclaims.  Concluding that this motion should be denied, we then address the basis for the

Court's subject matter jurisdiction and plaintiffs' motion to dismiss.

_____

       [1] See Notice of Motion to Strike Defendant Subhi Sayyed's Amended Answer and
Counterclaims or, In the Alternative, to Dismiss Defendant Subhi Sayyed's Counterclaims, filed
June 16, 2017 (Docket # 60); Memorandum of Law in Support of Plaintiffs' Motion to Strike
Defendant Subhi Sayyed's Amended Answer and Counterclaims or, In the Alternative, to
Dismiss Defendant Subhi Sayyed's Counterclaims, filed June 16, 2017 (Docket # 61) ("Pls.
Mem."); Memorandum of Law in Opposition to Plaintiffs' Motion to Strike Defendant's Answer
and Counterclaims, filed July 17, 2017 (Docket # 62) ("Def. Mem."); Reply in Support of
Plaintiffs' Motion to Strike Defendant Subhi Sayyed's Amended Answer and Counterclaims or,
In the Alternative, to Dismiss Defendant Subhi Sayyed's Counterclaims, filed Aug. 7, 2017
(Docket # 63) ("Pls. Reply").

I.  <u>MOTION TO STRIKE ANSWER AND COUNTERCLAIMS</u>

A.  <u>Procedural History</u>

On October 11, 2015, plaintiffs filed a complaint against defendants alleging violations of the Fair Housing Act, 42 U.S.C. § 3601 <u>et</u> <u>seq.</u>, and various state law causes of action.  <u>See</u> Complaint, filed Nov. 6, 2015 (Docket # 1) ("Compl.").  Plaintiffs allege that the defendants, acting as plaintiffs' landlords, discriminated against plaintiffs on the basis of family status, harassed them, unlawfully evicted them, and destroyed their property.  <u>See</u> Compl. ¶ 1.  After Sayyed moved to dismiss the original Complaint, <u>see</u> Notice of Motion, filed Jan. 15, 2016 (Docket # 14), plaintiffs filed an Amended Complaint, <u>see</u> Amended Complaint and Jury Demand, filed Feb. 5, 2016 (Docket # 20) ("Am. Compl.").  Defendants moved to dismiss the Amended Complaint, as well as to strike certain statements from the Amended Complaint.  <u>See</u> Notice of Motion, filed Feb. 26, 2016 (Docket # 21); Notice of Motion, filed Feb. 26, 2016 (Docket # 26).  These motions were denied on September 28, 2016.  <u>See</u> Memorandum & Order, filed Sept. 28, 2016 (Docket # 44).

The order denying the motion to dismiss required defendants to file their answers to plaintiffs' Amended Complaint within thirty days, or October 28, 2016.  <u>See</u> Memorandum & Order, filed Sept. 28, 2016 (Docket # 44), at 28.  Sayyed filed his first Answer in this case on October 28, 2016.  <u>See</u> Defendant Subhi Sayyed's Answer to Amended Complaint, filed Oct. 28, 2016 (Docket # 46) ("Answer").  The Answer included no counterclaims.

After a failed settlement conference, the Court issued a Scheduling Order on May 22, 2017, pursuant to Federal Rule of Civil Procedure 16 that included a provision stating as follows: "The parties may move to amend the pleadings or join any other parties no later than June 2, 2017."  Scheduling Order, filed May 22, 2017 (Docket # 56) ("Scheduling Order"), at 1.

2

On June 2, 2017, Sayyed filed an Amended Answer to the Complaint that included counterclaims for breaches of contract, fraud, and assault. See Defendant Subhi Sayyed's Amended Answer to Amended Complaint and Counterclaims, filed June 2, 2017 (Docket # 57).[2] Prior to filing his Amended Answer, Sayyed did not file a motion to amend his Answer. Sayyed has since stated in his opposition brief to the instant motion that he is moving to amend his Answer, see Def. Mem. at 7-8, though he has not actually filed a notice of motion as contemplated by Local Civil Rule 6.1.

B. Discussion

Plaintiffs contend that Sayyed's Amended Answer and Counterclaims should be struck because Sayyed failed to timely move for leave to amend his Answer. See Pls. Mem. at 3-4. Plaintiffs do not argue that a motion to amend, if filed on the day Sayyed filed his Amended Answer, would have been untimely under the Scheduling Order. Instead, they argue that the Amended Answer is untimely because it was not accompanied by a motion to amend.

While we do not fault plaintiffs for raising this issue, we find it appropriate to sua sponte extend Sayyed's time to file the motion to amend to the date of the filing of his memorandum of law. We do this because Sayyed filed the Amended Answer by the deadline contained in the Court's Scheduling Order and the filing itself made plain that Sayyed was seeking to amend his Answer. Not only do we possess the power to extend the deadline, it has been held that a court

---

[2] The "amended answer," "counterclaims," and "prayer for relief" sections of this document contain non-consecutively numbered paragraphs. For the purpose of resolving this motion, the Court will refer to "Am. Answer" when referring to numbered paragraphs appearing in the amended answer section of this document, see Defendant Subhi Sayyed's Amended Answer to Amended Complaint and Counterclaims, filed June 2, 2017 (Docket # 57), at 1-24, "Counterclaims" when referring to numbered paragraphs appearing in the counterclaims section, see id. at 25-28, and "Prayer for Relief" when referring to numbered paragraphs appearing in the prayer for relief section, see id. at 28.

"has the discretion to grant leave to amend <u>sua sponte</u>" even when the amending party has "not moved for leave to amend the [pleading]." <u>S. Ill. Laborers' & Emp'rs Health & Welfare Fund v. Pfizer Inc.</u>, 2009 WL 3151807, at *1 n.3 (S.D.N.Y. Sept. 30, 2009) (citations omitted). This discretion includes the ability to retroactively grant a party leave to file an amended pleading. <u>See</u> <u>Levisohn, Lerner, Berger & Langsam v. Med. Taping Sys., Inc.</u>, 20 F. Supp. 2d 645, 648 (S.D.N.Y. 1998).

Additionally as discussed at length in <u>Fresh Del Monte Produce, Inc. v. Del Monte Foods, Inc.</u>, 304 F.R.D. 170, 176 (S.D.N.Y. 2014), "a district court has discretion to consider Rule 15(a) factors notwithstanding the failure to show good cause for violating a Rule 16(b) deadline." Rule 15 of the Federal Rules of Civil Procedure mandates that a court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). The policy behind this rule is that "[l]iberal amendment promotes judicial economy by making it possible to dispose of all contentions between parties in one lawsuit." <u>Bilt-Rite Steel Buck Corp. v. Duncan's Welding & Corr. Equip., Inc.</u>, 1990 WL 129970, at *1 (E.D.N.Y. Aug. 24, 1990) (citing <u>Jenn-Air Prods. Co. v. Penn Ventilator, Inc.</u>, 283 F. Supp. 591, 594 (E.D. Pa. 1968)). The Court may deny leave to amend for "good reason," which normally involves an analysis of the factors articulated in <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962): undue delay, bad faith, futility of amendment, or undue prejudice to the opposing party. <u>See</u>, <u>e.g.</u>, <u>McCarthy v. Dun & Bradstreet Corp.</u>, 482 F.3d 184, 200 (2d Cir. 2007) (citing <u>Foman</u>, 371 U.S. at 182).

Case law is clear that "[m]ere delay . . . absent a showing of bad faith or undue prejudice[] does not provide a basis for a district court to deny the right to amend." <u>State Teachers Ret. Bd. v. Fluor Corp.</u>, 654 F.2d 843, 856 (2d Cir. 1981) (citing <u>Howey v. United States</u>, 481 F.2d 1187, 1190-91 (9th Cir. 1973); and <u>Middle Atl. Utils. Co. v. S.M.W. Dev.</u>

Corp., 392 F.2d 380, 384 (2d Cir. 1968)).  On the issue of prejudice, a court considers, "among other factors, whether an amendment would require the opponent to expend significant additional resources to conduct discovery and prepare for trial or significantly delay the resolution of the dispute."  Ruotolo v. City of New York, 514 F.3d 184, 192 (2d Cir. 2008) (internal quotation marks omitted) (quoting Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993)).  Obviously, "[u]ndue prejudice arises when an amendment comes on the eve of trial and would result in new problems of proof."  Id. (internal quotation marks and alteration omitted) (quoting Fluor Corp., 654 F.2d at 856).  However, mere allegations that an amendment "will require the expenditure of additional time, effort, or money do not themselves constitute undue prejudice."  Christians of Cal., Inc. v. Clive Christian N.Y., LLP, 2014 WL 3605526, at *5 (S.D.N.Y. July 18, 2014) (internal quotation marks and alterations omitted) (quoting A.V. by Versace, Inc. v. Gianni Versace, S.p.A., 87 F. Supp. 2d 281, 299 (S.D.N.Y. 2000)).

    None of the Foman factors suggest that leave to amend should be denied.  There is no basis to believe that Sayyed's failure to move for leave to amend by the deadline was the result of bad faith.  Indeed, the fact that Sayyed filed his Amended Answer by the deadline this Court set for moving for leave to amend suggests that he was merely mistaken as to the Court's requirements for amending his Answer.  The timing of the filing also does not suggest that there has been any undue delay.  Plaintiffs point to no prejudice resulting from the delay in making the motion to amend.  At the time of Sayyed's filing, the parties had only just made their initial disclosures, and discovery was not scheduled to close until months later.  See Scheduling Order at 1.  As for futility, that issue is resolved in the next section in the context of plaintiffs' motion to dismiss.  In sum, all other Foman factors favor permitting Sayyed to amend his Answer.

    Accordingly, the Court nunc pro tunc grants Sayyed leave to file the Amended Answer

5

and Counterclaims that he filed on June 2, 2017.

II.  SUBJECT MATTER JURISDICTION AND PLAINTIFFS' MOTION TO DISMISS

    A.  Facts Alleged in the Amended Answer and Counterclaims

    For the purpose of deciding plaintiffs' motion to dismiss Sayyed's Counterclaims, the Court assumes that the factual allegations in Sayyed's Amended Answer and Counterclaims are true and draws all reasonable inferences in his favor.  See, e.g., Steginsky v. Xcelera Inc., 741 F.3d 365, 368 (2d Cir. 2014) (citation omitted).

    Sayyed alleges that on February 1, 2014, Khodeir and Elgahsh entered into a written agreement (the "Agreement")  to rent Apartment 1R at 2150 Chatterton Avenue in the Bronx.  See Counterclaims ¶ 6.  Sayyed signed the Agreement as "landlord."  See id.  The Agreement obligated Khodeir and Elgahsh to pay $1,400 per month to use and occupy the apartment.  See id.  It also obligated Khodeir and Elgahsh to pay $25 per week for any late rent payments and to pay "all legal costs."  See id. ¶ 8.  The Agreement provided that no more than five persons would reside in the apartment.  See id. ¶ 7.  At the time they signed the Agreement, Khodeir and Elgahsh told Sayyed that they had two children, and that four persons in total would reside in the apartment.  See id. ¶ 14.  They paid Sayyed $2,800 in cash as payment for rent for February and March 2014.  See id. ¶ 9.

    Following their signing of the Agreement, plaintiffs stayed in the apartment until November 15, 2014.  See id. ¶ 20.  Sayyed alleges that Khodeir and Elgahsh breached the Agreement in several respects during that time.  First, Sayyed alleges that Khodeir and Elgahsh failed to pay any rent after their initial $2,800 payment.  See id. ¶¶ 19, 21.  He also alleges that plaintiffs allowed seven individuals to reside in the apartment.  See id. ¶¶ 11, 17.

    Finally, Sayyed alleges that Khodeir assaulted him on October 16, 2014.  See id. ¶ 23.

Sayyed alleges that he and Khodeir were in the apartment on that date when Khodeir shoved him against the wall, strangled him, and threatened to "cut [his] throat like ISIS." Id. Khodeir was subsequently arrested and charged with several state law criminal offenses. See id. In connection with the prosecution of these charges, Sayyed was granted orders of protection on October 19, 2014, and June 15, 2015. See id.

In his prayer for relief, Sayyed states that he is seeking, inter alia, "actual and compensatory damages in an amount to be determined at trial" and "punitive damages." See Prayer for Relief ¶¶ 2-3.

B. Subject Matter Jurisdiction

Other than challenging Sayyed's standing to assert some of his counterclaims, plaintiffs do not question this Court's basis for exercising subject matter jurisdiction over Sayyed's counterclaims in this case. Nevertheless, when subject matter jurisdiction is involved, "courts are obligated to consider sua sponte issues that the parties have disclaimed or have not presented." Gonzalez v. Thaler, 565 U.S. 134, 141 (2012) (citation omitted). We will thus consider whether this Court has subject matter jurisdiction to consider any of Sayyed's counterclaims.

Sayyed's counterclaims invoke this Court's subject matter jurisdiction under 28 U.S.C. § 1367(a). Section 1367(a) provides in relevant part that "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C.A. § 1367(a). To determine whether a state law claim "arises out of the same case or controversy" as a federal law claim, courts in this Circuit determine whether the claims arise out

of a "common nucleus of operative fact." Shahriar v. Smith & Wollensky Rest. Grp., Inc., 659 F.3d 234, 245 (2d Cir. 2011) (internal quotation marks and citation omitted).

We note that a similar test governs whether a counterclaim is compulsory under Federal Rule of Civil Procedure 13(a). "Whether a counterclaim is compulsory or permissive turns on whether the counterclaim arises out of the transaction or occurrence that is the subject matter of the opposing party's claim, and this Circuit has long considered this standard met when there is a logical relationship between the counterclaim and the main claim." Jones v. Ford Motor Credit Co., 358 F.3d 205, 209 (2d Cir. 2004) (internal quotation marks and citation omitted). It is settled that "compulsory counterclaims necessarily fall within a court's supplemental jurisdiction." Absolute Activist Master Value Fund, Ltd. v. Ewing, 2014 WL 3600409, at *3 (S.D.N.Y. July 11, 2014); accord D'Jamoos v. Griffith, 368 F. Supp. 2d 200, 205 (E.D.N.Y. 2005); Klein v. London Star, Inc., 26 F. Supp. 2d 689, 697 (S.D.N.Y. 1998).

We have discussed the case law governing compulsory counterclaims because we find a helpful analogy in employment discrimination cases. Courts have held that when a plaintiff sues for unlawful termination of employment, counterclaims arising from an employer's claimed non-discriminatory basis for termination of plaintiff's employment are compulsory counterclaims. See Klein, 26 F. Supp. 2d at 697-98 (finding that counterclaim was compulsory where it provided an alternative explanation for allegedly unlawful termination of plaintiff's employment on basis of age); Deshaw v. Lord & Taylor Div. of May Dep't Stores Co., 1991 WL 107271 (S.D.N.Y. June 13, 1991) (same).

Here, all of Sayyed's counterclaims relate to Sayyed's non-discriminatory explanations for conduct that plaintiffs allege constituted housing discrimination. Thus, Sayyed's counterclaims that plaintiffs committed fraud and breached the lease by allowing seven

8

individuals to reside in the apartment, see Counterclaims ¶¶ 10-17, have a "logical relationship," Jones, 358 F.3d at 209, to plaintiffs' claim that Sayyed violated the Fair Housing Act by asking plaintiffs to move out due to the number of children that plaintiffs had living at the apartment, see Am. Compl. ¶ 99.  Sayyed's counterclaim that plaintiffs failed to pay rent from April through November 15, 2014, see Counterclaims ¶¶ 18-21, has a logical relationship to plaintiffs' claim that Sayyed violated the Fair Housing Act by, inter alia, starting "a spurious housing court eviction proceeding for nonpayment of rent against Plaintiffs," Am. Compl. ¶ 111.  Finally, Sayyed's counterclaim that Khodeir assaulted Sayyed, Counterclaims ¶¶ 22-25, is logically related to plaintiffs' claim that Sayyed violated the Fair Housing Act by commencing "an unsubstantiated, and later to-be-dismissed, criminal complaint against Mr. Khodier," Am. Compl. ¶ 111.

Because the facts supporting Sayyed's counterclaims also represent non-discriminatory explanations for Sayyed's actions, we find that they are compulsory counterclaims and thus necessarily fall within the Court's supplemental jurisdiction under 28 U.S.C. § 1367(a).  See Absolute Activist Master Value Fund, Ltd., 2014 WL 3600409, at *3.  While 28 U.S.C. § 1367(c) permits a court to decline to exercise supplemental jurisdiction under certain conditions, none of those conditions apply here.

C.  Motion to Dismiss for Lack of Standing

With respect to Sayyed's first three counterclaims, which arise from the Agreement, plaintiffs allege that Sayyed has failed to satisfy the "injury in fact" requirement of Article III standing because he has not alleged that he owned the leased premises or had any authority to enter into the Agreement or collect rent from plaintiffs.  See Pls. Mem. at 5-6.

Under Article III of the United States Constitution, federal courts may hear only

"[c]ases" and "[c]ontroversies." U.S. Const. art. III, § 2, cl. 1. "Standing to sue is a doctrine rooted in the traditional understanding of a case or controversy." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016). "If plaintiffs lack Article III standing, a court has no subject matter jurisdiction to hear their claim." Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C., 433 F.3d 181, 198 (2d Cir. 2005); accord Altman v. Bedford Cent. Sch. Dist., 245 F.3d 49, 69 (2d Cir. 2001). Thus, "[i]t is well established . . . that before a federal court can consider the merits of a legal claim, the person seeking to invoke the jurisdiction of the court must establish the requisite standing to sue." Whitmore v. Arkansas, 495 U.S. 149, 154 (1990).

To satisfy the Article III standing requirement, the claimant must show: (1) that he or she "suffered an injury in fact — an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) that there was a "causal connection between the injury and the conduct complained of"; and (3) that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992) (internal quotation marks and citations omitted). Although challenges to standing have "sometimes" been brought under Federal Rule of Civil Procedure 12(b)(6), "the proper procedural route is a motion under Rule 12(b)(1)." All. for Envtl. Renewal, Inc. v. Pyramid Crossgates Co., 436 F.3d 82, 88 n.6 (2d Cir. 2006) (citation omitted). In considering a Rule 12(b)(1) motion to dismiss for lack of standing, the Court "may refer to evidence outside the pleadings." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000) (citing Kamen v. Am. Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986)).

Plaintiffs contend that Sayyed suffered no "injury in fact" because Marwan in fact owns

10

the building and Sayyed denied the paragraph in the Amended Complaint alleging that Sayyed has "authority to lease apartments within the building on behalf of [Marwan] . . . and the authority to collect rent from tenants residing in the building." Pls. Mem. at 6. In other words, plaintiffs essentially argue that because Sayyed had no authority to enter into the Agreement, he has no rights in the Agreement and was not injured by the Agreement's breach. See id. at 5-6.

While this argument may well be a defense to the merits to the contract claim — for example, it might permit plaintiffs to argue that Sayyed did not substantially perform under the Agreement —  we disagree that it implicates standing. The counterclaim specifically alleges that Sayyed was the "landlord" under the Agreement, Counterclaims ¶ 6, and thus it is a reasonable inference that payments under the Agreement were to be made to Sayyed. "[I]t is 'axiomatic' that a party to an agreement has standing to sue a counter-party who breaches that agreement, even where some or all of the benefits of that contract accrue to a third party." Frontier Commc'ns of N.Y., Inc. v. Int'l Bhd. of Elec. Workers, 2008 WL 1991096, at *3 (S.D.N.Y. May 6, 2008) (citation omitted). The allegation that Sayyed was a party to the breached Agreement establishes a sufficient stake in the outcome to satisfy the "injury in fact" requirement of Article III standing.

The cases cited by plaintiffs, New Amsterdam Casualty Company v. National Union Fire Insurance Co., 266 N.Y. 254 (1935) and Site Five Housing Development Fund Corporation v. Estate of Bullock, 112 A.D.3d 479 (1st Dep't 2013), are inapposite. New Amsterdam Casualty Company noted that, under New York state property law, either "privity of contract" or "privity of estate" is necessary for a party to successfully sue for rent under a lease. See 266 N.Y. at 259-60. Here, there was a contract to which Sayyed was a party. Site Five Housing Development Fund Corporation merely holds that a principal cannot be liable for an unauthorized contract

entered into by his agent.  See 112 A.D.3d at 480.  Neither case suggests that a party entering

into a contract in his own name lacks Article III standing to sue for the breach of that agreement.

Accordingly, the Court finds that Sayyed has standing to assert his counterclaims arising

from the purported breach of this agreement.

D.  <u>Motion to Dismiss for Failure to State a Claim</u>

"A motion to dismiss a counterclaim is evaluated under the same standard as a motion to

dismiss a complaint."  <u>Revonate Mfg., LLC v. Acer Am. Corp.</u>, 2013 WL 342922, at *2

(S.D.N.Y. Jan. 18, 2013) (internal quotation marks omitted) (quoting <u>Netrix Leasing, LLC v.

K.S. Telecom, Inc.</u>, 2001 WL 228362 (S.D.N.Y. Mar. 7, 2001)).  A party may move to dismiss a

claim pursuant to Federal Rule of Civil Procedure 12(b)(6) where the opposing party's pleading

"fail[s] to state a claim upon which relief can be granted."  While a court must accept as true all

of the allegations contained in the Counterclaims, that principle does not apply to legal

conclusions.  <u>See Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009); <u>Bell Atl. Corp. v. Twombly</u>, 550

U.S. 544, 555 (2007) ("[A party's] obligation to provide the grounds of his entitlement to relief

requires more than labels and conclusions, and a formulaic recitation of the elements of a cause

of action will not do.") (internal quotation marks, citation, and alteration omitted).  In other

words, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice," <u>Iqbal</u>, 556 U.S. at 678 (citation omitted), and thus a court's first task

is to disregard any conclusory statements in the pleading, <u>see id.</u> at 679.

Next, a court must determine if the Counterclaims contain "sufficient factual matter"

which, if accepted as true, state a claim that is "plausible on its face."  <u>Id.</u> at 678 (internal

quotation marks and citation omitted); <u>accord</u> <u>Port Dock & Stone Corp. v. Oldcastle Ne., Inc.</u>,

507 F.3d 117, 121 (2d Cir. 2007) ("[A pleading] must allege facts that are not merely consistent

with the conclusion that the [adverse party] violated the law, but which actively and plausibly suggest that conclusion.") (citations omitted).  A claim is facially plausible "when the [party] pleads factual content that allows the court to draw the reasonable inference that the [adverse party] is liable for the misconduct alleged.  The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that [an adverse party] has acted unlawfully."  Iqbal, 556 U.S. at 678 (internal quotation marks and citations omitted).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a pleading is insufficient under Fed. R. Civ. P. 8(a) because it has merely "alleged" — but not "'show[n]'—'that the pleader is entitled to relief.'"  Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Plaintiffs seek to dismiss all of Sayyed's counterclaims.

1. Counterclaim for Breach of Contract Based on the Agreement's Occupancy Restriction (Count I)

Count I of the Counterclaims alleges that plaintiffs breached the Agreement by having seven persons reside on the premises, rather than the maximum of five set forth in the Agreement.  Counterclaims ¶¶ 7, 10-12.  Plaintiffs argue that such a restriction is unenforceable under New York Real Property Law Section 235-f(4).  See Pls. Mem. at 6-7.  That statute provides:

> Any lease or rental agreement for residential premises entered into by two or more tenants shall be construed to permit occupancy by tenants, immediate family of tenants, occupants and dependent children of occupants; provided that the total number of tenants and occupants, excluding occupants' dependent children, does not exceed the number of tenants specified in the current lease or rental agreement, and that at least one tenant or a tenants' spouse occupies the premises as his primary residence.

N.Y. Real Prop. Law § 235-f(4) (emphasis added).  This statute further states that "[a]ny

provision of a lease or rental agreement purporting to waive a provision of this section is null and void." N.Y. Real Prop. Law § 235-f(7).

Here, Sayyed's Counterclaims state that the Agreement limited plaintiffs to five occupants. See Counterclaims ¶ 7. There is no allegation, however, that the Agreement restricted occupancy to exclude plaintiffs' immediate family. The Counterclaims further allege that seven individuals occupied plaintiffs' apartment. Id. ¶¶ 11, 17. The Counterclaims do not identify these individuals or state whether these individuals were related to plaintiffs. They merely allege that while the Agreement allowed for "up to three (3) more members of their family" to reside in the premises, the plaintiffs brought "additional individuals" into the apartment. See Am. Answer ¶ 5. While plaintiffs contend that four of these individuals were their children, see Pls. Mem. at 3, this fact is not alleged in the Counterclaims and the Court thus cannot consider it. See, e.g., Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002) (on a motion to dismiss, court is limited to allegations of the pleading including "any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (citations omitted). Accordingly, at this stage, plaintiffs' motion to dismiss based on section 235-f(7) must be denied.

Plaintiffs also move to dismiss the breach of contract counterclaim arising from their purported breach of the occupancy restriction on the ground that Sayyed has failed to plead damages. See Pls. Mem. at 7-8. We agree. Under New York law, "[t]o plead breach of contract, the proponent must allege the existence of a contract, the plaintiff's performance thereunder, the defendant's breach thereof, and resulting damages." Second Source Funding, LLC v. Yellowstone Capital, LLC, 144 A.D.3d 445, 445-46 (1st Dep't 2016) (citations omitted); accord Fischer & Mandell, LLP v. Citibank, N.A., 632 F.3d 793, 799 (2d Cir. 2011); JP Morgan

14

Chase v. J.H. Elec. of N.Y., Inc., 69 A.D.3d 802, 803 (2d Dep't 2010). Generally, a "pleading need only state allegations from which damages attributable to the defendant's conduct may be reasonably inferred." Schutz v. Kagan Lubic Lepper Finkelstein & Gold, LLP, 2013 WL 3357921, at *7 (S.D.N.Y. July 2, 2013) (internal quotation marks omitted) (quoting Fielding v. Kupferman, 65 A.D.3d 327, 442 (1st Dep't 2009)), aff'd, 552 F. App'x 79 (2d Cir. 2014). However, a breach of contract claim must still allege sufficient facts supporting damages to support a "plausible claim for relief." Landmark Ventures, Inc. v. Wave Sys. Corp., 2012 WL 3822624, at *3 (S.D.N.Y. Sept. 4, 2012) (citing Iqbal, 556 U.S. at 678), aff'd, 513 F. App'x 109 (2d Cir. 2013). "In the absence of any allegations of fact showing damage, mere allegations of breach of contract are not sufficient to sustain a complaint." Lexington 360 Assocs. v. First Union Nat'l Bank of N.C., 234 A.D.2d 187, 189-90 (1st Dep't 1996) (citations omitted).

Sayyed has failed to plausibly plead how he was damaged by plaintiffs' violation of the occupancy restriction. Sayyed simply alleges that "[d]espite their representation and warranties with respect to the number of occupants in apartment 1R, commencing in or about February 2014, Plaintiffs had seven (7) individuals who occupied the apartment." Counterclaims ¶ 11. Sayyed has pointed to no provision in the Agreement stipulating damages arising from the breach of this clause. Moreover, Sayyed alleges no other facts from which this Court can infer that the breach of this occupancy restriction harmed Sayyed.

Sayyed argues that the counterclaim gives "adequate notice of defendant's claim" and that he need not "allege any specific amount of monetary damages." See Def. Mem. at 13-14. But the defect in the pleading is not a lack of "notice" or of a "specific amount" of damages. The defect is that it does not plausibly show any damage at all that resulted from the alleged violation of the provision. Accordingly, Count I must be dismissed.

## 2. Counterclaim for Fraud Based on the Agreement's Occupancy Restriction (Count II)

Count II of the Counterclaims alleges that plaintiffs knew that seven people would reside in the apartment but fraudulently misrepresented the number of individuals to defendants in order to secure the use of Apartment 1R. See Counterclaims ¶¶ 13-17. Plaintiffs move to dismiss Sayyed's fraud counterclaim as duplicative of his breach of contract counterclaim arising from the occupancy restriction. See Pls. Mem. at 8-9.[3]

"It is a well-established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated." Clark-Fitzpatrick, Inc. v. Long Island R.R. Co., 70 N.Y.2d 382, 389 (1987) (citations omitted). Accordingly, under New York law a fraud claim may be maintained alongside a breach of contract claim only if the claimant "(i) demonstrate[s] a legal duty separate from the duty to perform under the contract; or (ii) demonstrate[s] a fraudulent misrepresentation collateral or extraneous to the contract; or (iii) seek[s] special damages that are caused by the misrepresentation and unrecoverable as contract damages." Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc., 98 F.3d 13, 20 (2d Cir. 1996) (citations omitted); accord Canon U.S.A., Inc. v. Cavin's Bus. Sols., Inc., 208 F. Supp. 3d 494, 503 (E.D.N.Y. 2016). None of these exceptions apply.

Sayyed has demonstrated no separate legal duty that forms the basis of his fraud claim. Under New York law, "where parties have entered into a contract, courts look to that agreement to discover . . . the nexus of the parties' relationship and the particular contractual expression establishing the parties' interdependency." EBC I, Inc. v. Goldman, Sachs & Co., 5 N.Y.3d 11,

---

[3] Plaintiffs did not raise the issue that the fraud claim similarly fails to allege damages — a requirement for a claim for fraud. See, e.g., Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC, 797 F.3d 160, 170 (2d Cir. 2015). Accordingly, we do not reach this issue.

19-20 (2005) (internal quotation marks and alterations omitted) (quoting Ne. Gen. Corp. v. Wellington Adv., 82 N.Y.2d 158, 160 (1993)).  New York courts therefore generally do not imply duties of "higher trust" between contracting parties unless the parties expressly create such a relationship.  Id. at 20 (quoting Ne. Gen. Corp., 82 N.Y.2d at 162).  The extent of the duty between the parties here was embodied in the Agreement.  The Agreement does not indicate the creation of a duty of "higher trust," such as a fiduciary duty.  Moreover, given plaintiffs' status as tenants, no higher duty could plausibly be inferred.

Second, the alleged misrepresentation at issue here was not "collateral" to the contract.  "A claim for fraudulent inducement of contract" is not collateral to a contract "if the promise concerned the performance of the contract itself."  Fairway Prime Estate Mgmt., LLC v. First Am. Int'l Bank, 99 A.D.3d 554, 557 (1st Dep't 2012); accord HSH Nordbank AG v. UBS AG, 95 A.D.3d 185, 206 (1st Dep't 2012); Havell Capital Enhanced Mun. Income Fund, L.P. v. Citibank, N.A., 84 A.D.3d 588, 589 (1st Dep't 2011).  The occupancy restriction at issue here was contained in the contract itself.  See Counterclaims ¶ 7.  Thus, abiding by that restriction was required for plaintiffs' performance under the Agreement.  Any false promises to abide by this restriction thus were not collateral to the contract.

Third, Sayyed alleges no damages arising from this alleged fraudulent misrepresentation that are distinct from his breach of contract claim.  Sayyed purports to seek punitive damages in his Amended Answer.  See Prayer for Relief ¶ 3.  Under New York law, "[p]unitive damages are not recoverable for an ordinary breach of contract," Rocanova v. Equitable Life Assurance Soc'y of U.S., 83 N.Y.2d 603, 613 (1994), but may be recovered for fraud that is "founded upon such moral indifference as to be aggravated by evil or to be demonstrative of a criminal indifference to civil obligations," or is otherwise "close to criminality, being variously described as utter

recklessness, recklessness and of a criminal nature, wanton or malicious, and gross and outrageous," Koch v. Greenberg, 14 F. Supp. 3d 247, 273 (S.D.N.Y. 2014) (internal quotation marks and citations omitted). No allegations in the Counterclaims plausibly suggest that any such circumstances exist here. Accordingly, Sayyed has failed to distinguish his contract claim based on the relief sought. See Mosaic Caribe, Ltd. v. AllSettled Grp., Inc., 117 A.D.3d 421, 422-23 (1st Dep't 2014) (dismissing fraud claim as duplicative when, inter alia, "apart from an unelaborated request for punitive damages," fraud claim "seeks the same damages as the breach of contract claim").

Without citing any authority, Sayyed argues that "plaintiffs' dispute as to the validity of the contract allows defendant to pursue his claims of fraud." Def. Mem. at 14. New York courts, however, have routinely dismissed fraud claims as duplicative of breach of contract claims while simultaneously dismissing the related breach of contract claim. See, e.g., Stefatos v. Frezza, 95 A.D.3d 787, 787-88 (1st Dep't 2012); Glanzer v. Keilin & Bloom LLC, 281 A.D.2d 371, 372 (1st Dep't 2001); Bronx Store Equip. Co., Inc. v. Westbury Brooklyn Assocs., L.P., 280 A.D.2d 352, 352-53 (1st Dep't 2001). Thus, the fact that Sayyed could not recover damages based on a breach of contract theory with respect to this representation does not mean his duplicative fraud claim should not be dismissed.[4]

Accordingly, Count II of Sayyed's Counterclaims is dismissed and it is not necessary to

---

[4] We are aware that one case has stated that "a fraud claim may be dismissed as duplicative only as against a defendant against whom the related contract claim is viable." Richbell Info. Servs., Inc. v. Jupiter Partners, L.P., 309 A.D.2d 288, 305 (1st Dep't 2003) (emphasis omitted) (citing Bronx Store Equip. Co., 280 A.D.2d 352). However, this statement was dictum and it does not appear that by "viable" the court meant capable of withstanding a motion to dismiss. The case Richbel Info. Servs. cites for this proposition, Bronx Store Equip. Co.., in fact held that the trial court had properly dismissed fraud claims because they "simply duplicated plaintiff's contract claims." 280 A.D.2d at 352.

reach plaintiffs' argument that it fails to comply with Federal Rule of Civil Procedure 9(b).

### 3. Counterclaim for Breach of Contract Based on Plaintiffs' Failure to Pay Rent (Count III)

Count III of the Counterclaims alleges that plaintiffs were required to make a monthly payment of $1,400 but failed to pay rent from April through November 15, 2014, when they left the apartment. See Counterclaims ¶¶ 18-21. Plaintiffs argue that Sayyed's third counterclaim should be dismissed based on New York Real Property Law § 235-f(7). See Pls. Mem. at 6-7. However, Count III makes no reference to the occupancy restriction. Accordingly, plaintiffs' motion to dismiss the third counterclaim is denied.

### 4. Counterclaim for Assault (Count IV)

Plaintiffs seek to dismiss Sayyed's assault counterclaim on the ground that it is time-barred. See Pl. Mem. at 11-12. Under the applicable New York statute of limitations, a claim for assault must be commenced within one year from the date of the incident. See N.Y. C.P.L.R. 215(3). Here, the alleged assault occurred on October 16, 2014. Counterclaims ¶ 23. Sayyed filed his Amended Answer and Counterclaims on June 2, 2017. See Am. Answer; Counterclaims. Sayyed does not contest that his assault counterclaim is untimely under N.Y. C.P.L.R. 215(3) if measured by the date of the filing of his Amended Answer.

Instead, he argues that his counterclaim for assault is a compulsory counterclaim under Federal Rule of Civil Procedure 13(a), that as a result "no independent jurisdictional basis for the counterclaim need be shown," and that the "counterclaims therefore relate back to the filing to [sic] at least of the amended complaint and thus are not barred by the applicable statute of limitations." Def. Mem. at 15, 16. Sayyed provides no citation for this argument.

We begin by noting that 28 U.S.C. § 1367(a) — not Rule 13(a) — is the source of this

Court's "jurisdiction" over the assault and other counterclaims as we have already described. See section II.B above. The question of whether the counterclaim "relates back" for statute of limitations purposes is governed neither by 28 U.S.C. § 1367(a) nor by Rule 13(a). Instead, it is governed by Federal Rule of Civil Procedure 15(c)(1). In relevant part, Rule 15(c)(1) permits "relat[ion] back" to the date of the "original pleading." Here, the "original pleading" that Sayyed seeks to relate back to is his Answer. That Answer, however, was filed on October 28, 2016, which is more than one year after the date of the alleged assault. See Answer. Thus, applying the relation back rule in Federal Rule of Civil Procedure 15(c) is of no help to Sayyed.[5]

Sayyed states without citation that the "original pleading" to which his Counterclaims should "relate back" is the plaintiffs' Amended Complaint. Def. Mem. at 16. We reject this reading of Rule 15. Rule 15 governs efforts by a party to amend a pleading filed by that party. See Fed. R. Civ. P. 15(a)(1), (2) (giving rules for when "[a] party may amend its pleading") (emphasis added). Thus, Sayyed cannot use Rule 15(c) to relate back his Counterclaims to any of the plaintiffs' pleadings. At best, he could use the rule to relate back his Counterclaims to his own Answer. See generally Banco Para el Comercio Exterior de Cuba v. First Nat'l City Bank, 744 F.2d 237, 243 (2d Cir. 1984) ("trial courts in this Circuit have [] ruled that a counterclaim amended pursuant to Rule 13(f) may relate back to the date of the original answer"); Korean Air Lines Co., Ltd. v. Port Auth. of N.Y. & N.J., 2012 WL 6967232, at *5 (E.D.N.Y. Aug. 1, 2012) (a proposed amended answer containing counterclaims "relates back to the date of his original

---

[5] While Sayyed does not raise the point, October 28, 2016, is also more than one year after the termination of the criminal action against Sayyed, which was October 19, 2015, see Pls. Mem. at 12, and thus his claim is untimely even under N.Y. C.P.L.R. 215(8), which extends the limitations period to one year after dismissal of any criminal proceedings that relate to a claim for assault.

answer"). As noted, because that Answer was filed after the expiration of the statute of limitations, Count IV is untimely and must be dismissed.[6]

IV. CONCLUSION

For the foregoing reasons, plaintiffs' motion to strike defendant Subhi Sayyed's Amended Answer and Counterclaims or, in the alternative, to dismiss defendant Subhi Sayyed's Counterclaims (Docket # 60), is granted in part and denied in part. Counts I, II and IV of the Counterclaims are dismissed.

SO ORDERED

Dated: November 1, 2017
New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

---

[6] N.Y. C.P.L.R. 203(d) provides that "[a] defense or counterclaim is not barred if it was not barred at the time the claims asserted in the complaint were interposed." While some case law suggests that Sayyed cannot take advantage of this provision, see Coleman, Grasso & Zasada Appraisals v. Coleman, 246 A.D.2d 893, 894 (3d Dep't 1998) (C.P.L.R. 203(d) "does not apply to counterclaims asserted in an amended answer"), we do not reach the issue inasmuch as Sayyed did not raise it.

21